JOHN DOYLE, *et al.,* v. HUGH BOYLE.

1. ARREST AND BAIL; *Action on Undertaking; Imprisonment of Debtor; Section 511, Civil Code, Construed.* It is not a fatal defect in an undertaking given under section 511 of the code of civil procedure, that it fails to show that the debtor was actually in jail, provided it shows that he had actually been arrested under the writ of execution, and was then in the custody of the officer. The word "imprisoned," as used in said section, is broad enough to include any actual arrest and detention by the sheriff, whether in or out of the jail.

2. ——— The case of *Lytle, Adm'r, v. Davis,* 2 Ohio, 277, considered, and disapproved.

*Error from Saline District Court.*

Boyle filed in the district court his petition against *John Doyle* and *L. J. Grant,* which, after the proper caption and title, is as follows:

"The plaintiff shows to the court, and alleges, that on the 2d day of June 1874, he obtained a judgment by the consideration of the district court of Saline county, duly rendered against one James Quinn, in the sum of $770, and the further sum of $56.60 costs of said suit, and interest on said judgment from date thereof at the rate of ten per cent. per annum; that on the 10th of said June, by the consideration of said court, plaintiff obtained an execution against the person of the said James Quinn, on said judgment, which said execution against the person was duly issued and directed and delivered to the sheriff of said Saline county; that said sheriff, by virtue of said execution, afterward on the 11th day of said June, at two o'clock P.M. of said day, arrested the said James Quinn in said county of Saline; that the said James Quinn, and the said *John Doyle* and *L. J. Grant,* defendants herein, as his sureties, afterward on the 11th of said June, at four o'clock P.M. of said day, the said James Quinn being then in the custody of said sheriff as a prisoner as aforesaid, in Saline county, made and executed an undertaking, which was approved by the said sheriff, and the said defendants, under their hands, thereby covenanted and agreed with the plaintiff that if the said James Quinn should go beyond prison bounds, to-wit, beyond the boundary of the said Saline county, before being discharged according to law, they, the said sureties, would pay to Hugh Boyle, the plaintiff herein, the said sum of $770, said judgment, together with $56.60 costs therein, and all costs that should accrue on said judgment, and interest on said judgment; that by reason of said bond so given and approved, the said James Quinn was by said sheriff released from said custody, and allowed to go without hinderance from said imprisonment; that on the 12th day of July 1874, the said James Quinn went beyond said prison bounds, and left the said county of Saline for parts unknown, before being discharged according to law; that said James Quinn has never been discharged according to law; that no part of said judgment has ever been paid; that a copy of said undertaking is hereto attached and made a part of this petition; that said plaintiff on the 13th day of

said July, caused an execution to be issued on said judgment, and delivered to the sheriff of said Saline county, which was afterward duly returned wholly-unsatisfied. Wherefore, plaintiff prays judgment against the said defendants for the sum of $826.60, and interest thereon at the rate of ten per cent. per annum from the 2d day of June 1874, with costs of suit and collection."

The undertaking mentioned in said petition, is in the words and figures following:

"WHEREAS, in a certain action in the district court of Saline county, Kansas, wherein Hugh Boyle is plaintiff, and James Quinn is defendant, the said Hugh Boyle, on the 2d day of June 1874, obtained a judgment against the said James Quinn in the sum of seven hundred and seventy dollars, and the further sum of fifty-six dollars and sixty cents costs of suit; and whereas the said Hugh Boyle, on the 10th day of June 1874, by the consideration of said court, obtained an execution against the person of the said judgment-debtor, said James Quinn, on said judgment, and whereas the said James Quinn has on said execution been arrested, and is now in the custody of the sheriff of said Saline county: Now therefore, we, the said James Quinn as principal, and John Doyle and L. J. Grant as sureties, hereby undertake to said Hugh Boyle, and promise and agree, and hereby bind ourselves, that if said James Quinn shall go beyond prison bounds, to-wit, beyond the boundary of the said Saline county before being discharged according to law, we, the said sureties, will pay to the said Hugh Boyle, plaintiff, the said sum of seven hundred and seventy dollars, said judgment, together with fifty-six dollars and sixty cents costs thereon, and all costs that shall accrue on said judgment, and all interest on said judgment.

"In witness whereof we have hereunto subscribed our names this 11th day of June 1874.

"JAMES QUINN,
"JOHN DOYLE,
"L. J. GRANT."

*Doyle* and *Grant* demurred to said petition, on the ground that it did not state facts sufficient to constitute a cause of action. This demurrer was overruled by the district court, at the November Term 1876. The subsequent pleadings and

proceedings are sufficiently stated in the opinion. Defendants *Doyle* and *Grant* bring the case here on error.

*J. G. Mohler*, for plaintiffs in error.

*John Foster*, for defendant in error.

The opinion of the court was delivered by

BREWER, J.: This was an action on an undertaking given under section 511 of the code of civil procedure. (Gen. Stat., p. 730.) A demurrer to the petition was overruled; and this is the first alleged error: the undertaking is copied in the petition, and the specific objection is, that it does not show that the party for whom it was given was *actually in jail*. The language of the statute is, "any person imprisoned under the provisions," etc., while the recital of the undertaking, as well as the averment of the petition, is—"has been arrested and is now in the custody of the sheriff," etc. In support of this objection the case of *Lytle v. Davis*, 2 Ohio, 277, decided in 1826, is cited. And this case it must be conceded is very strongly in point. In it it was held that a bond given for prison limits was void unless the defendant was actually in prison, and that fact was recited in the bond. The binding authority of this decision is invoked upon the rule laid down in *Bemis v. Becker*, 1 Kas. 248, that where one state borrows or adopts a statute of another, it is presumed to take it with the construction placed upon it by the judiciary of that state. That rule is hardly applicable in this case, for the statute then in force in Ohio differs materially from ours, as well as from the later statute of that state. True, there is a general similarity, as there is between the statutes of many states bearing upon this subject-matter, or indeed upon almost any given subject; and the word "imprisoned," upon which special reliance was placed by the court in that case, appears in our statute as well as in the later one in Ohio. But there is no such identity, actual or substantial, that it can be presumed that our legislature simply adopted the old Ohio statute, or intended to transfer that statute, with the

constructions it had received, to this state.    Again, the construction of a single clause or section is often affected by the general system of the law of which it is a part.    And it will be remembered that there has been going on for years a wonderful change in the provisions of law concerning imprisonment for debt.    At the time of that decision the law still allowed imprisonment for debt, though it must be conceded it was departing from the hardships of the common law. Section 15 of art. 8, of the Ohio constitution of 1802, was then in force as follows:

"The person of a debtor, where there is not strong presumption of fraud, shall not be confined in prison, after delivering up his estate for the benefit of his creditor or creditors, in such manner as shall be prescribed by law."

Now neither Kansas nor Ohio tolerates imprisonment for debt except for fraud.    Const. Ohio, § 15, art. 1; Const. Kansas, Bill of Rights, § 16.    This practically excludes imprisonment except as a punishment for acts criminal, or *quasi* criminal, and leaves the unfortunate but honest debtor free from any possibility of personal restraint.    Now the construction then given to words and phrases in the statutes concerning imprisonment for debt, while perhaps just and fair when considered in reference to the general policy of the law, might be open to severe criticism if insisted upon when used in statutes framed under an entirely different policy. We do not feel therefore bound to follow that decision in the meaning given to the word "imprisoned."    We see no reason why a party should be actually put into a jail, and locked up before he is permitted to avail himself of that statute. The term "imprisoned," is not generally so limited.    Does not the action of false imprisonment lie for any illegal apprehension and detention?    Bouvier says in his Dictionary, vol. 1, p. 612, that "as to what will amount to an imprisonment, the most obvious modes are confinement in a prison, or a private house; but a forcible detention in the street, or the touching of a person by a peace officer by way of arrest, are also imprisonments."    It is doubtless true, that there must

be an actual arrest and detention; that there is in this respect no mere constructive imprisonment; that as held in the case of *Berry v. Adamson*, 6 Bar. & Cress. 528, the mere execution and sending of a bail-bond by a defendant on receiving a message from a sheriff that he has a writ, makes no imprisonment. Again, it is a well-known fact that many counties in this state have been at different times without any jail, and special provision is made for confinement in the jail of one county of persons charged with crime in other counties destitute of jails. (Gen. Stat. 532, § 16.) But there is no such provision as to persons arrested on civil process. And as counsel pertinently asks, "must the sheriff wait till a jail is erected before he is authorized to accept the bond?" It is made the duty of the sheriff having process against the person "to arrest such debtor and commit him to the jail of the county until he pay the judgment, or is discharged according to law." (Gen. Stat. p. 728, § 505.) The sheriff is by law the keeper of the jail. (Gen. Stat. p. 530, § 3.) Now from the moment of the arrest until the final discharge, the debtor is in the custody of the sheriff, and is equally in his custody whether before or after he has crossed the threshold of the jail. What difference then whether the bond be executed before or after he has so crossed? The purpose of the statute was to give to the debtor taken under process the limits of the county in which to labor or carry on business, so as to make the debt and at the same time prevent his going beyond the reach of process and the watch of the creditor. That purpose is accomplished if the debtor is permitted to give bond as soon as taken into custody. We see no good reason for limiting the meaning of the word "imprisoned" to actual confinement in the jail, but think it may fairly be construed as denoting the actual detention by the sheriff under the writ; and when a debtor is so seized and held, it seems to us he may be considered, in the language of the statute, as one "imprisoned under the provisions of this article." There was no error therefore in overruling the demurrer to the petition.

Afterward the defendants filed an answer setting up two defenses, the first specifically alleging that Quinn was not put into jail by the sheriff, and the other alleging a surrender by the sureties to the sheriff. A demurrer to these two defenses was sustained, and this is alleged as error. But counsel in his brief fails to point out wherein he claims there was error other than in the matter already considered by us, and we shall certainly not seek to find errors when counsel has found none.

After the demurrer to the answer was sustained, there was no issue of fact to be tried.

The judgment will be affirmed.

All the Justices concurring.