Dunlevy v. Wolferman.

---

## GRACE DUNLEVY, Respondent, v. FRED WOL-FERMAN, Appellant.

### Kansas City Court of Appeals, March 7, 1904.

1. **SLANDER: Defense: Honest Belief: Mitigation.** The fact that a defendant was honestly mistaken will not excuse a false and slanderous charge but only tends to mitigate.

2. **FALSE IMPRISONMENT: Honest Belief: Mitigation.** As in slander so in false imprisonment honest intentions and mistakes will constitute only mitigation and will not excuse.

3. ———: **Words: Force.** Force is not necessary to a false imprisonment; words alone are frequently sufficient to bring about actual restraint.

4. ———: **Damages: Excessive: Appellate Practice.** In cases of of slander and false imprisonment the amount of damages is almost entirely within the exclusive province of the jury and the appellate courts will not interfere only in cases where the amount is so grossly excessive as to shock one's sense of justice.

Appeal from Jackson Circuit Court.—*Hon. J. H. Slover,* Judge.

AFFIRMED.

*Grant I. Rosenzweig* for appellant.

(1) Instructions must not cite evidence or matters immaterial or calculated to mislead. Elliot v. Keith, 32 Mo. App. 588; Georgan v. Wabash, 40 Mo. App. 447; Rapp v. Vogel, 45 Mo. 524; Willis v. Stevens, 24 Mo. App. 504; Proctor v. Loomis, 35 Mo. App. 488; Felix v. Shirley, 60 Mo. App. 625; Koontz v. Kauffman, 31 Mo. App. 420; State v. Hibler, 149 Mo. 478; Barr v. Kansas City, 105 Mo. 558; Newall v. St. Louis, 5 Mo. App. 259. Matter about following on a public street is misleading. Keightl v. Egan, 65 Ill. 237. (2) An instruction on slander where the words have either a bad or an innocent meaning, is erroneous unless the jury is required to find evil intent. Odgers on L. and S. 53; Crystal v. Craig, 80 Mo. 373; Walker v. Hoefner, 54 Mo. App. 558; Unterberger v. Sharp, 51 Mo. App. 111. (3) The words "having" and "taking" are not synonymous or equivalent. Proof even of equivalent words is insufficient. Mix v. McCoy, 22 Mo. App. 493; Wood v. Hillbrush, 23 Mo. App. 398; Crystal v. Craig, 80 Mo. 374; Birch v. Benton, 26 Mo. 153. (4) Arrest is not accomplished in the absence of intent, physical detention or threats, with a display of present force reasonably calculated to induce reasonable fear of present violence in the mind of a reasonable person. And the elements, if omitted from evidence or instruction, are fatal. Same is true of assault. Ency. of Evidence, "Assault;" 2 Greenl. on Evidence, 83; Metcalf v. Connor, 5 Litt. (15 and 16 Ky.) 370; Sterns v. Sampson, 59 Me. 568; Dagenhardt v. Heller, 93 Wis. 662; State v. Stonestreet, 92 Mo. App. 220; Douglass v. Kansas City, 147 Mo. 428; McCaskey v. Garnett, 91 Mo. App. 359; Reichle v. Bentele, 97 Mo. App. 52. (5) Nor unless there is fear of violence founded upon reasonable basis. 1 Blackstone 130; Wilkinson v. Hood, 65 Mo. App. 491. (6) An instruction authorizing damages for emotion for a legal wrong without requiring the jury to find either bodily injury or malice, insult or oppression, is error. Deming v.

Chicago, 80 Mo. App. 152; Alvers v. Merchants, 138 Mo. 140.

*Joseph S. Rust* for respondent.

Filed lengthy argument.

ELLISON, J.—This is an action for damages. There seems to be joined in one count of the petition a complaint against defendant which, if true, would make him guilty of slander and of false imprisonment. But no question was made of this in the trial court and we accept the case as presented there. Plaintiff recovered and defendant appealed.

Defendant is the proprietor of a general retail grocery store, where he also sold fresh meat. The system by which sales were conducted was that as they were made the salesman would give to the customer a check which was numbered and upon which he put the amount of the purchase. If the customer made purchases of different clerks he would get a corresponding number of checks. These were taken by the purchaser to the cashier and were there paid. Plaintiff, an unmarried woman, and her married sister went into the store to make purchases. They bought two articles (neither of them being meat) received two checks with amount of their purchases thereon, made payment to the cashier and left the store, going down the street in a southern direction. Just before they left the store the meat salesman had notified defendant's general manager that some one had got meat of him and had not paid the check to the cashier. The manager became impressed in some way that the delinquent parties were plaintiff and her sister and silently watched them until they left the store, when he started in pursuit of them, bareheaded. He overtook them in about half a block and excitedly caught plaintiff by the shoulder, turned her around and said: "You have some meat you didn't pay for." Plaintiff

Dunlevy v. Wolferman.

denied having any meat, when he said, "You have! You have a check there for the meat that you didn't pay for!" She again denied and said she was not about the meat counter, when he said: "You did! And you will have to go back to the store with me! You both will have to go back to the store!" All three then went back to the store and to the meat counter where the manager said to the salesman: "These are the ladies who got the meat!" The salesman said they were not the persons and then the manager said: "You must excuse me;" and plaintiff replied that she would not; that she would have him arrested. The manager's manner was excited and rough when he overtook plaintiff and laid hold of her shoulder. His being bare-headed, his rapid gait and his excited talk and manner when he stopped them, caused a crowd to assemble and to follow them back to the store and there (some of them) await the outcome. The plaintiff and her sister were much frightened as well as greatly humiliated. They were entirely innocent. The manager, however, was undoubtedly honestly mistaken.

The court gave for plaintiff two instructions. One of these was merely as to the damages which could be assessed. The other merely recited the case as made for plaintiff, and instructed that if those things were believed to find for her. It was certainly very general. It did not tell the jury what would be slander, or arrest, or false imprisonment. But all complaint which defendant makes on this head he cured by himself getting from the court a full and complete explanation of what was necessary to constitute slander, arrest or imprisonment. Eleven instructions were given for him, nine without amendment by the court, and two with some change properly made. So there can be no doubt whatever that the instructions as a series gave the jury the fullest information on all things which could be invoked in defendant's behalf.

Taking the petition and the evidence thereunder as we have in a condensed way set out, we have only to decide whether such evidence, if believed, made a case for which defendant must answer in damages, and we have no doubt that he did. The fact that defendant was honestly mistaken will not excuse a false and slanderous charge. Odgers on Libel and Slander, 6, 153, 264. Honest belief in the truth of the charge is only a mitigation. Story v. Early, 86 Ill. 451; Davis v. Marxhausen, 103 Mich. 315; King v. Root, 4 Wend. 113; 18 Amer. & Eng. Ency. 1112.

And so in actions for false imprisonment honesty of purpose and intention will not excuse the trespass. Boeger v. Langenberg, 97 Mo. 390; Monson v. Ross, 86 Mo. App. 89. It takes less to constitute false imprisonment than malicious prosecution. McCaskey v. Garrett, 91 Mo. App. 354. There is a distinction stated which is to be borne in mind: that false imprisonment is an interference with the personal liberty of the party complaining which is unlawful and without authority. In malicious prosecution the arrest would be by process lawful and regular in itself, but sued out from malicious motives and without probable cause. Yet, in false imprisonment, as in slander, honest intentions and mistake will constitute mitigation. 12 Amer. & Eng. Ency. (2 Ed.), 725, 726.

The evidence undoubtedly justified a finding of a forced detention. Overtaking plaintiff on the street in the manner already stated, taking her by the shoulder, making the accusation and saying, "You will have to go back to the store; you both will have to go back to the store;" the fright it gave plaintiff and the fear with which she was impressed, afforded ample ground for the jury to find that she was forcibly restrained of her liberty. There need not be actual force. The restraint may be from the fear of force, as well as from force itself. There need not be an actual taking hold: words alone are frequently sufficient to bring about the actual

constraint of liberty. 12 Amer. & Eng. Ency. (2 Ed.), 733-738. And so it is said that: "An actual manual arrest is not necessary to constitute false imprisonment. A demonstration looking to arrest, which to all appearances can only be avoided by submission, operates as effectually if submitted to, as if the arrest had been forcibly accomplished without such submission. Brushaber v. Stigenann, 22 Mich. 266. To tell one on a ferry that he shall not leave it until a certain demand is paid, is an imprisonment if one submits through fear though the person is not touched and no actual violence offered." Cooley on Torts, 170. "One is not obliged to incur the risk of personal violence and insult by resisting until actual violence be used. There need be no formal declaration of arrest." Pike v. Hanson, 9 New Hamp. 491. "False imprisonment may be committed by words alone, or by acts alone or by both, and by merely operating the will of the individual. It is not necessary that the individual be confined within a prison or assaulted or even touched." Comer v. Knowles, 17 Kans. 436; and Doyle v. Royle, 19 Kans. 168.

We have noted the argument presented by defendant in support of the criticism that plaintiff's instruction was a comment on the evidence. We think it not fairly subject to such complaint.

We have also considered what has been said on the amount of the damages. The verdict was for $875 and the trial court had that sum reduced to $500. In such cases it is almost the exclusive province of the jury to determine the amount of damages. The only instance where we could rightfully interfere is where the sum fixed upon is so grossly excessive as to shock one's sense of justice. The sum assessed against defendant is not large enough to do that. Conceding the mistake made by defendant was an honest one, yet it was his act and he must answer for it just as he would answer if, by inadvertence, he should destroy one's property. The fact that he was honest in his belief doubtless made the

verdict as small as it is and doubtless caused the court to further reduce it. For if the same acts had been prompted by a malicious heart, without any apparent cause or excuse, a greatly larger sum, by way of punishment, would have been properly returned.

The judgment is affirmed. All concur.